**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| TIMOTHY LIE and THING SHIANG NIO, | ) <br> ) <br> ) Case No. <br> ) <br> Plaintiffs, ) <br> ) **COMPLAINT FOR DEFAMATION** <br> v. ) <br> ) **JURY TRIAL DEMANDED** <br> LIDL US, LLC and LIDL US ) <br> OPERATIONS, LLC, ) <br> ) <br> Defendants. ) <br> ) |

Plaintiffs Timothy Lie ("Mr. Lie") and Thing Shiang Nio ("Ms. Nio") (collectively, "Plaintiffs") hereby state their Complaint for Defamation against Defendants Lidl US, LLC ("Lidl US") and Lidl US Operations, LLC ("Lidl Operations") (collectively, "Lidl" or "Defendants"), as follows:

**INTRODUCTION**

1.      This is an action for defamation arising out of false accusations of theft and fraud that Lidl, through its employees, made against Plaintiffs—a mother and her adult son—at the Lidl grocery store located at 2985 Peachtree Pkwy, Suwanee, GA 30024 (the "Suwanee Location"). Plaintiffs, who own and operate a restaurant, went to the Suwanee Location to purchase groceries. After they pointed out that they had been charged four times for a single item, Lidl's store supervisor accused them of being thieves who routinely make fraudulent returns. Lidl made those accusations

both in the presence of one of Plaintiffs' customers and to a responding law enforcement officer.

2.      Plaintiffs are not thieves. They have no criminal history, and they did not attempt to defraud Lidl. They went to the Suwanee Location to do exactly what every other customer does—buy groceries—and they raised a valid billing dispute when they were overcharged. Lidl responded by publicly branding them as criminals. The accusations did significant harm to Plaintiffs, and for this they seek redress.

## PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff Timothy Lie is an individual resident and citizen of the State of Georgia, who resides in Gwinnett County, Georgia.

4.      Plaintiff Thing Shiang Nio is an individual resident and citizen of the State of Georgia, who resides in Forsyth County, Georgia.

5.      Defendant Lidl US, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Arlington, Virginia. Lidl US, LLC is registered to do business in the State of Georgia and in fact does business in the State of Georgia, including by operating retail grocery stores in this State. The sole member of Lidl US, LLC is Lidl Stiftung & Co. KG, a German limited partnership organized under German law with its principal place of business in Germany. Lidl US, LLC may be served with summons and process

2

through its registered agent, CSC of Stephens County, Inc., 597 Big A Road, Toccoa, GA 30577.

6.    Defendant Lidl US Operations, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Arlington, Virginia. Lidl US, LLC is the sole equity member of Lidl US Operations, LLC, and there are no Georgia members. Lidl US Operations, LLC is registered to do business in the State of Georgia and in fact does business in the State of Georgia, including by operating retail grocery stores in this State. Lidl US Operations, LLC may be served with summons and process through its registered agent, CSC of Stephens County, Inc., 597 Big A Road, Toccoa, GA 30577.

7.    The Suwanee Location, and the employees whose conduct is described herein, were operated and/or employed by Lidl US, Lidl US Operations, or both.

8.    There exists complete diversity of citizenship between Plaintiffs and Defendants.

9.    The amount in controversy for each Plaintiff exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

10.    Therefore, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

11.    This Court has personal jurisdiction over Defendants because they are registered to do business in, and in fact transact business within, the State of Georgia,

and because the claims at issue in this case arise out of Defendants' conduct in the State of Georgia.

12.     Venue is proper in the United States District Court for the Northern District of Georgia, Gainesville Division, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district and because Defendants are subject to personal jurisdiction in this district.

## **FACTUAL ALLEGATIONS**

13.     Plaintiffs Mr. Lie and Ms. Nio own and operate a restaurant together with Ms. Nio's husband, who is also Mr. Lie's father.

14.     On June 15, 2025, Plaintiffs went to the Suwanee Location to purchase grocery items for their restaurant.

15.     Among the items Plaintiffs purchased was one ribeye steak, priced at $9.79.

16.     After completing the transaction and taking the groceries to their vehicle, Plaintiffs noticed that they had been charged for four ribeye steaks, a total of $39.16, even though they had only purchased one.

17.     Upon realizing the overcharge while still in the parking lot, Plaintiffs returned inside the Suwanee Location to seek a refund and to advise store staff that they had been charged for four steaks but had purchased only one.

18.    Instead of refunding the overcharge, reviewing the security cameras to determine what had occurred, or requesting to see Plaintiffs' groceries to confirm, Lidl's store supervisor—whom Plaintiffs understand to be an individual named Steven King (the "Store Supervisor")—and another Lidl employee, falsely accused Plaintiffs of attempted theft that evening and of theft on prior occasions.

19.    Even as of filing this Complaint, Defendants refuse to provide Plaintiffs the security video.

20.    During the in-store interaction in which Plaintiffs sought a refund for steaks they did not purchase, the Store Supervisor made false and *per se* defamatory statements communicating that Plaintiffs engaged in theft, attempted theft, and fraud, including through the following statements:

a.    "You are robbing our store"; and

b.    "You've finessed us on returns before."

21.    The Store Supervisor's accusations were heard by a customer of Plaintiffs, who happened to be shopping at the store.

22.    The Store Supervisor refused to process a return, and also stated about the Plaintiffs, "I don't trust you," yelled at them, cursed at them, and bullied them, including by yelling, "Get the f[***] out of my store."

23.    The Store Supervisor knew that this interaction was being recorded by the Suwanee Location's surveillance system.

24.    Plaintiffs—not Defendants or their employees—then called the police, including because Defendants were taking Plaintiffs' money while falsely accusing them of stealing.

25.    A deputy with the Forsyth County Sheriff's Office responded to the Suwanee Location and spoke with both Plaintiffs and the employees.

26.    As Lidl's employees knew, intended, and expected, the deputy was recording their statements, including on his body worn camera and by writing them down (which the employees observed). And the deputy indeed drafted an incident report recounting the false and *per se* defamatory statements described below.

27.    The employees, including the Store Supervisor, made false and *per se* defamatory statements about Plaintiffs to the Sheriff's deputy, communicating that Plaintiffs engaged in theft, attempted theft, and fraud, including through the following statements:

    a.    "I'm hearing that they got busted for finessing money out of returns already, and then they came to do it again";

    b.    "[M]y employee said that they had bought what they said they didn't have. So they bought four of a ribeye steak, then they came back and they were like, 'we only bought one, can we please return it?'"

6

c. "And one of my other employees, the story kept changing to him over and over and over. And I've seen them do fraudulent returns before, and I've turned them away before";

d. "I was like, 'OK, I'm not doing this return because I've seen you do something fraudulent before.' I'm refusing your service on the return"; and

e. "It was the first item on the receipt, so it's not just a random coincidence that he would have hit four before scanning. . . ."

28. The Store Supervisor further requested that the deputy trespass-warn Plaintiffs from returning to the store, which the deputy did.

29. Through the foregoing statements detailed in paragraphs 20 and 27 (collectively, the "Defamatory Statements"), Lidl conveyed the false and *per se* defamatory meanings that Plaintiffs engaged in theft, attempted theft, and fraud.

30. The Defamatory Statements are plainly of and concerning Plaintiffs, and witnesses (including Plaintiffs' customer and the deputy) understood that the statements were being made about Plaintiffs.

31. The Defamatory Statements are false. Plaintiffs are not thieves, have never attempted to steal from or defraud Lidl, have not made fraudulent returns at any Lidl store, have not stolen from Lidl, and did not in fact purchase or receive four ribeye steaks from Lidl on the night in question. Further, none of Defendants, the

7

Store Supervisor, or other employee had refused returns from Plaintiffs before as alleged.

32.    The truth is Plaintiffs only purchased one ribeye steak from Lidl on the night in question.

33.    Lidl published the Defamatory Statements with knowledge of their falsity, or with reckless disregard for their truth or falsity.

34.    Before making the Defamatory Statements, Lidl, including its employees, had all of the tools available to it to determine the accusations were false. Beyond Plaintiffs' statements that they had been overcharged, and their possession of only one ribeye steak, Lidl maintained surveillance video of the Suwanee Location depicting the transaction at issue.

35.    Before making the Defamatory Statements, the Lidl employees knew that they had surveillance footage that captured the transaction at issue.

36.    The surveillance video will show that Plaintiffs only purchased one ribeye steak.

37.    Nevertheless, the Lidl employees ignored the surveillance footage, which was a known source of objective evidence that would reveal what occurred.

38.    Lidl's decision to make the Defamatory Statements without reviewing easily available and incontrovertible evidence in its possession—namely, the

surveillance video—demonstrates Lidl's purposeful avoidance of the truth and supports a clear inference of actual malice.

39.    Lidl further made the Defamatory Statements in reliance on a biased source and without conducting any reasonable investigation, including by failing to review the surveillance video and by falsely accusing Plaintiffs of prior fraudulent returns for which Lidl had no basis. The Store Supervisor expressly admitted to his bias and ill will towards the Plaintiffs, whom he falsely accused of prior crime and whom he bullied on the night in question.

40.    Plaintiffs did not risk criminal prosecution over the sum of ~$30, and it was knowingly false and/or reckless of Defendants to have accused them otherwise.

41.    Lidl, including its employees, knowingly fabricated the Defamatory Statements from whole cloth, as Plaintiffs had never committed or attempted to commit any crime at Lidl, and because Plaintiffs in fact only bought one ribeye steak on the night of the incident.

42.    The Store Supervisor demonstrated his consciousness of the falsity of his accusation when he affirmatively stated that Defendants would not pursue criminal charges against Plaintiffs.

43.    The Store Supervisor acknowledged to the responding deputy that he would preserve the surveillance video of the Suwanee Location that evening so that

it would be available for later review, and Mr. Lie specifically requested that the surveillance video be preserved.

44. On October 17, 2025, Plaintiffs sent Lidl US a demand for retraction and correction of the Defamatory Statements. A true and correct copy of the October retraction demand is attached hereto as "Exhibit A."

45. On June 2, 2026, Plaintiffs sent Lidl Operations a demand for retraction and correction of the Defamatory Statements. A true and correct copy of the June retraction demand is attached hereto as "Exhibit B."

46. Lidl failed and refused to retract or correct any of the Defamatory Statements.

47. On several occasions since the incident, Plaintiffs requested that Lidl provide a copy of the surveillance video. Lidl has refused to do so, which refusal further supports the inference that the Defamatory Statements were false and that Lidl knew them to be false.

48. At all relevant times, the Store Supervisor and the other Lidl employee who made the Defamatory Statements were acting within the course and scope of their employment with Lidl, and Lidl is therefore liable for the Defamatory Statements under the doctrine of respondeat superior.

49. Ms. Nio and her husband emigrated from Indonesia to the United States, where Mr. Lie was born. They have few relatives in the United States. The

Lidl employees' statements were particularly outrageous and painful to Plaintiffs, including because they were directed at beloved family members in each other's presence, and the statements were made in front of third parties, including a regular customer of their restaurant who has not returned since the incident.

50. Ms. Nio experienced severe emotional distress, including insomnia, crying fits when thinking about Lidl accusing her only son of criminal conduct, fear that Lidl will attempt to have her wrongfully prosecuted, and severe humiliation at being publicly accused of a crime, including in front of one of her customers.

51. Likewise, Mr. Lie experienced severe emotional distress, including anxiety about going to grocery stores for fear of being wrongfully prosecuted, fear that Lidl will attempt to have him wrongfully prosecuted, and severe humiliation at being publicly accused of a crime, including in front of one of his customers.

## COUNT I: DEFAMATION *PER SE*

52. Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully stated herein.

53. Lidl, through the Store Supervisor and another employee, published the Defamatory Statements to third parties, including to a customer of Plaintiffs who was shopping at the store and to the responding law enforcement officer.

54. The Defamatory Statements are of and concerning Plaintiffs.

55. The Defamatory Statements are false.

11

56.    The Defamatory Statements are defamatory *per se*, including because they impute to Plaintiffs the crimes of theft and fraud, and because they are injurious to Plaintiffs in their trade and business as restaurant owners and operators.

57.    Because the Defamatory Statements are defamatory *per se*, damages are presumed as a matter of law.

58.    Lidl published the Defamatory Statements without privilege, including because Lidl published them with actual malice—i.e., knowledge of their falsity or reckless disregard for their truth or falsity—as well as ill will and an intent to injure Plaintiffs.

59.    Lidl's publication of the Defamatory Statements was beyond negligent, because they were published with actual malice.

60.    Lidl knew or should have known that the Defamatory Statements were false, including because Lidl maintained and had access to surveillance video of the transaction at issue that contradicted the Defamatory Statements, and including because Plaintiffs only purchased one ribeye steak.

61.    Lidl published the Defamatory Statements with actual malice, including by failing to conduct any reasonable investigation prior to publication, by knowingly disregarding exculpatory evidence available to it, by engaging in a purposeful avoidance of the truth, by relying on a biased source, by manufacturing

the accusations from whole cloth, and by making statements that are inherently improbable. Lidl thus did not publish the Defamatory Statements in good faith.

62.    The Defamatory Statements directly and proximately caused Plaintiffs to suffer actual injury, including damage to their reputations and severe emotional and mental distress.

63.    Each Plaintiff is entitled to an award of compensatory damages against Defendants in an amount to be proven at trial, in excess of $75,000.

64.    Lidl published the Defamatory Statements with ill will and an intent to injure the Plaintiffs.

65.    Lidl's conduct in publishing the Defamatory Statements was outrageous, malicious, and willful, demonstrating that entire want of care that raises a conscious indifference to consequences, and with a specific intent to cause harm based on ill will. Plaintiffs are thus entitled to an award of punitive damages against Defendants pursuant to O.C.G.A. § 51-12-5.1.

66.    Lidl has acted in bad faith, has been stubbornly litigious, and has caused Plaintiffs unnecessary trouble and expense. Plaintiffs are therefore entitled to recover their reasonable attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs the following relief against Defendants:

A.    Compensatory damages for each Plaintiff in an amount to be proven at trial in excess of $75,000;

B.    An award of punitive damages in an amount to be proven at trial;

C.    An award of attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11, in an amount to be proven at trial; and

D.    Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all counts so triable.

Respectfully submitted this 11th day of June, 2026.

WADE, GRUNBERG & WILSON, LLC

*/s/ Jonathan D. Grunberg*
Jonathan D. Grunberg
State Bar No. 869318
jgrunberg@wgwlawfirm.com
3100 Cumberland Blvd. SE, Suite 1130
Atlanta, GA 30339
Telephone: (404) 600-1153
Facsimile: (470) 970-4303

*Attorneys for Plaintiffs*

14

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D of the United States District Court for the Northern District of Georgia, the undersigned counsel certifies that this COMPLAINT FOR DEFAMATION was prepared in Times New Roman 14-point font, as mandated by Local Rule 5.1C.

This 11th day of June, 2026.

*/s/ Jonathan D. Grunberg*
Jonathan D. Grunberg

15